# EXHIBIT A



*14616671*

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

21st Century Oncology Of California, A Medical Corporation; 21st Century Oncology Holdings, Inc.; And Does 1 Through 10, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JAMES CORBEL and ROXANNE HAATVEDT individually and on behalf of a class of similarly situated individuals

<div style="border:1px solid;">

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

# FILED
ALAMEDA COUNTY

APR 25 2016

CLERK OF THE SUPERIOR COURT

By _____ Deputy

</div>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Rene C. Davidson Courthouse<br><br>Alameda County Superior Court<br>1225 Fallon Street, Oakland, CA 94612 | **CASE NUMBER:**<br>*(Número del Caso):*<br>**RG 1 6 8 1 3 0 8 1** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Eric A. Grover (SBN 136080), KELLER GROVER LLP, 1965 Market St., San Francisco, CA (415)543-1305

| DATE: **APR 25 2016**<br>*(Fecha)* | **Chad Finke** | Clerk, by _____<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* 21st Century Oncology, A Medical Corporation

   under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

*Page 1 of 1*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

*14616667*

1   ERIC A. GROVER (SBN 136080)
    eagrover@kellergrover.com
2   CAREY G. BEEN (SBN 240996)
    cbeen@kellergrover.com
3   **KELLER GROVER LLP**
    1965 Market Street
4   San Francisco, California 94103
    Telephone:    (415) 543-1305
5   Facsimile:     (415) 543-7861

6   Attorneys for JAMES CORBEL
    and ROXANNE HAATVEDT , individually
7   and on behalf of a class of similarly
    situated individuals

8

F I L E D
ALAMEDA COUNTY

APR 25 2016

CLERK OF THE SUPERIOR COURT
By _____ Deputy

9        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10          **IN AND FOR THE COUNTY OF ALAMEDA**

11

12   JAMES CORBEL and ROXANNE
    HAATVEDT individually and on behalf of a
13   class of similarly situated individuals,

14              Plaintiff,

15   v.

16   21ST CENTURY ONCOLOGY OF
    CALIFORNIA, A MEDICAL
17   CORPORATION; 21ST CENTURY
    ONCOLOGY HOLDINGS, INC.; and DOES
18   1 through 10, inclusive,

19           Defendants.

20

Case No.   **RG 16 813 081**

**CLASS ACTION**

**COMPLAINT FOR DAMAGES,
RESTITUTION AND
INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**BY FAX**

### CLASS ACTION COMPLAINT

Plaintiffs James Corbel and Roxanne Haatvedt, on behalf of themselves and a Class of similarly situated individuals as defined herein, allege on information and belief and the investigation of their counsel as follows:

### PARTIES

1.     Plaintiff James Corbel ("Corbel") is, and at all times relevant to this complaint was, a resident of California.

2.     Plaintiff Roxanne Haatvedt ("Haatvedt") is, and at all times relevant to this complaint was, a resident of California.

3.     Corbel and Haatvedt are collectively referred to herein as "Plaintiffs."

4.     21st Century Oncology of California, A Medical Corporation is a California corporation with a principal place of business in Fort Myers, Florida.

5.     21st Century Oncology Holdings, Inc. is a Delaware corporation headquartered in Fort Myers, Florida.

6.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue those defendants by those fictitious names ("Doe Defendants"). Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and on that ground allege that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged and that Plaintiffs' injuries and damages, as alleged, are proximately caused by those occurrences.

7.     Unless otherwise specified, "Defendants" or "21st Century Oncology" means and refers to Defendants 21st Century Oncology of California, A Medical Corporation, 21st Century Oncology Holdings, Inc. and the fictitiously named Defendants, each and all of them.

8.     At all times relevant to this complaint, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their agency and employment with and for Defendants.

9.     Plaintiffs are informed and believe, and on that basis allege, that, at all relevant

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**                                   - 1 -

times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.  Plaintiffs are informed and believe and thereon allege that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to California Civil Code § 56, *et seq.*

11.    This Court has personal jurisdiction over the parties because Defendants have continuously and systematically conducted business in the State of California.   Likewise, Plaintiffs' injuries occurred in the State of California and arose out of their contact with Defendants in California.

12.    Venue is proper in this Court because California Code of Civil Procedure §§ 395 and 395.5 and case law interpreting those sections provide that if a business entity fails to designate with the office of the California Secretary of State a principal place of business in California, it is subject to being sued in any county that a plaintiff desires.   On information and belief, 21st Century Oncology of California, A Medical Corporation and 21st Century Oncology Holdings, Inc. have failed to designate a principal place of business in California with the office of the Secretary of State as of the date this Complaint was filed.

## FACTUAL ALLEGATIONS

13.    21st Century Oncology is a provider of cancer care services, the largest radiation oncology provider, and one of the largest groups of urologists in the United States.   Headquartered in Fort Myers, Florida, it has 145 treatment centers located in 17 states, including 24 treatment

1   centers in the state of California.

2       14.    Throughout its treatment centers, 21st Century Oncology employs or is affiliated

3   with over 900 physicians, including radiation oncologists, urologists, hematologists, gynecologic

4   oncologists, surgeons, and pathologists.  21st Century Oncology advertises that it maintains

5   specialties in a number of cancer related treatments and surgeries, including those such as radiation

6   oncology, breast cancer surgery, colorectal surgeries, and pulmonology.

7       15.    21st Century Oncology and the Doe Defendants operate treatment centers under the

8   21st Century Oncology name and under various other names.  For example, in California,

9   Defendants have operated treatment centers under the names "Redding Cancer Treatment Center,"

10  "Solace Cancer Care," "Santa Cruz Radiation Oncology," "Cabrillo Radiation Oncology Center,"

11  "Coastal Radiation Oncology Center," "Mission Hope Cancer Center," "North Oaks Radiation

12  Oncology Center," and numerous others that do not directly use the name 21st Century Oncology.

13      16.    Through their treatment centers, Defendants routinely collect and/or generate

14  protected personal medical about their patients.  This information includes, but is not limited to,

15  patient names, Social Security numbers, physician's names, diagnoses and treatment information,

16  and insurance information.

17      17.    The treatment centers provide 21st Century Oncology with access to at least some,

18  if not all, of the personal and medical information that they collect.  Such information is or was

19  maintained, among other places, in a 21st Century Oncology network server.  As explained by 21st

20  Century Oncology in its form 10-K for the fiscal year ended December 31, 2014 filed with the

21  United States Securities and Exchange Commission ("SEC") on March 27, 2015:

22      **Management Information Systems**
        We utilize centralized management information systems to closely monitor
23      each treatment center's operations and financial performance. Our systems
        track patient data, physician productivity, coding, and billing. The systems
24      allow us to perform budget analyses, historical financial comparisons, and
        treatment center benchmarking, enabling management to actively evaluate
25      performance. We have also developed a proprietary image and text retrieval
        system, which facilitates the storage and review of patient medical charts and
26

27

28

films. We periodically review our management information systems for possible refinements. [1]

18.     21st Century Oncology's 10-K further states, as a risk factor to be considered by potential investors, that its Management Information Systems, which include patient personal and medical information, are vulnerable to "break-ins."  Specifically, the Form 10-K states: [e]ven though we have implemented network security measures, our servers are vulnerable to computer viruses, break-ins and similar disruptions from unauthorized tampering."[2]

**21st Century Oncology's October 2015 Data Breach**

19.     In March 2016, 21st Century Oncology publicly disclosed that it had suffered the type of network break-in that it warned it was at risk for in its Form 10-K.

20.     In a data breach notification letter ("notification") sent to current and former patients and submitted to the California State Attorney General Office, 21st Century Oncology explained the following:

> On November 13, 2015, the Federal Bureau of Investigation (FBI) advised us that patient information was illegally obtained by an unauthorized third party who may have gained access to a 21st Century database. We immediately hired a leading forensics firm to support our investigation, assess our systems and bolster security. The forensics firm determined that, on October 3, 2015, the intruder may have accessed the database, which contained information that may have included your name, Social Security number, physician's name, diagnosis and treatment information, and insurance information. We have no evidence that your medical record was accessed.[3]

21.     The notification further stated that 21st Century Oncology is continuing to work closely with the FBI on the investigation into the intrusion into its system and that "[i]n addition to security measures already in place, [21st Century Oncology] ha[s] also taken steps to enhance internal security protocols to help prevent a similar incident in the future."

22.     Each notification was sent under the name 21st Century Oncology and did not

---

[1] *See* 21st Century Oncology Holdings, Inc. Form 10-K for fiscal year ended December 31, 2014 at p. 9, available at https://www.21co.com/investors/sec-filings (last visited April 18, 2016).

[2] *Id.* at p. 45.

[3] *See* data breach notification attached hereto as **Exhibit A**, also available on the State of California Department of Justice, Office of the Attorney General's website at https://oag.ca.gov/ecrime/databreach/reports/sb24-60307 (last visited April 18, 2016).

1    identify the names of the specific treatment centers from which the information was gathered.

2    23.    The notifications also downplayed the risk associated with the data breach stating

3    "we have no evidence that your medical record was accessed" and that "[w]e have no indication

4    your information has been misused in any way." Notably absent from the notifications, however,

5    was any clear explanation as to why affected patients should feel confident that their personal and

6    medical information involved in the breach will not be misused at some later point in time.

7    24.    Additionally, out of what it claims was "an abundance of caution, the notifications

8    offered affected patients one year of free membership in Experian's ProtectMyID Alert. Based on

9    information and belief, it did not offer any patients any other remedy, monetary or otherwise.

10   25.    The notifications were not the only place 21st Century Oncology discussed the data

11   breach. In a separate Form 8-K SEC filing dated March 4, 2016, 21st Century Oncology stated

12   that it would be notifying 2.2 million current and former patients about the breach and that certain

13   pieces of their information may have been "copied and transferred" into the possession of the

14   unauthorized third party.[4] Explicit reference to such copy and transfer was omitted from the

15   patient notifications.

16   26.    The notifications and SEC filing both appear to be intentionally vague about the

17   details of the data breach. However, 21st Century's comprehensive data breach notification

18   process is telling about the scope of the breach.

19   27.    On or around the same date as its SEC filing, 21st Century Oncology notified the

20   United States Department of Health and Human Services about the data breach. Such notice is

21   required under the Federal HITECH Act, which is part of the Health Insurance Portability and

22   Accountability Act ("HIPAA"), only when unencrypted protected health information has been, or

23   is reasonably believed to have been, accessed, acquired, or disclosed as a result of a breach.[5]

24   28.    On or around the same date as its SEC filing, 21st Century Oncology also notified

25   _____

26   [4] *See* 21st Century Oncology Holdings, Inc. Form 8-K, dated March 4, 2016 available at
     https://www.21co.com/investors/sec-filings (last visited April 18, 2016) and attached hereto as
     **Exhibit B.**

27   [5] Public Law 111-5, Section 13402.

28   _____

     **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**                                    - 5 -

1    the California State Attorney General's Office about the data breach.  Such notice is required only

2    when a covered business knows, or reasonably believes that, the unencrypted personal information

3    of more than 500 California residents has been acquired by an unauthorized person.[6]

4           29.    21st Century Oncology also notified 2.2 million current and former patients,

5    including at least 500 current or former patients in the state of California, about the data breach.

6    Such notices are again only required under California state and Federal law when would the

7    notifying party knows, or at the very least reasonably believed, that information relating to the

8    notified patients had been, accessed, acquired, or disclosed as a result of a breach.[7]

9           30.    Finally, 21st Century Oncology offered to provide each of the 2.2 million patients

10   with its patients with Experian's ProtectMyID credit monitoring services.[8]  Such services are not

11   without expense to 21st Century Oncology.  Indeed, such services currently retail for $4.95 for the

12   first month, and then $19.95 for each month thereafter.  The provision of such services plainly

13   reflects that 21st Century Oncology believes patients are at risk of their information being misued.

14   **21st Century Oncology Had a Duty to Protect Patients' Personal and Medical Information**

15          31.    Healthcare providers like 21st Century Oncology have a duty to protect the

16   confidentiality of patients' personal and medical information. California's Confidentiality of

17   Medical Information Act, California Civil Code § 56, subsection 56.101. requires that:

18       (a) Every provider of health care, health care service plan, pharmaceutical
         company, or contractor who creates, maintains, preserves, stores, abandons,
19       destroys, or disposes of medical information shall do so in a manner that
         preserves the confidentiality of the information contained therein. Any
20       provider of health care, health care service plan, pharmaceutical company, or
         contractor who negligently creates, maintains, preserves, stores, abandons,
21       destroys, or disposes of medical information shall be subject to the remedies
         and penalties provided under subdivisions (b) and (c) of Section 56.36. (b) (1)
22       An electronic health record system or electronic medical record system shall
         do the following: (A) Protect and preserve the integrity of electronic medical
23       information. (B) Automatically record and preserve any change or deletion of
         any electronically stored medical information. The record of any change or
24

25

26   [6] Cal. Civ. Code § 1798.82(a).

27   [7] Public Law 111-5, Section 13402, Cal. Civ. Code § 1798.82(a).
     [8] *See* **Exhibit B**.

28

deletion shall include the identity of the person who accessed and changed the medical information, the date and time the medical information was accessed, and the change that was made to the medical information.

32.   HIPAA also specifies technical safeguards for storing personal and medical information which include, among other things, requiring information access controls, encryption and decryption mechanisms for medical information or equivalent alternative measures, audit controls that record and examine activity in information systems storing medical information, and methods to authenticate or verify that a person seeking access to protected health information is the one claimed.[9]

33.   21st Century Oncology is well aware of these duties.   In its notice of privacy practices provided on its website, it states:

**Our Responsibilities**

We are required by law to maintain the privacy of your protected health information, to provide you with notice of our legal duties and privacy practices with respect to that protected health information, and to notify any affected individuals following a breach of any unsecured protected health information. We will abide by the terms of the notice currently in effect.[10]

34.   By failing to properly secure its network and allowing an authorized third party to access and acquire current and former patient's personal and medical information, 21st Century Oncology failed to live up to its duty of protecting such information.

**Healthcare Providers Face a Known Risk of Personal and Medical Information Theft.**

35.   Medical information in particular can be extremely lucrative on black markets.   For example, the online publication www.esecurityplanet.com quotes one information security professional, Kunal Rupani, director of product management at Accellion, as stating that:

"Unlike credit card numbers and other financial data, healthcare information doesn't have an expiration date[.]" [] "As a result, a patient's records can sell on the black market for upwards of fifty times the amount of their credit card number, making hospitals and other healthcare organizations extremely

---

[9] 45 CFR 164.312.

[10] 21st Century Oncology Notice of Privacy Practices dated March 26, 2013, available at www.21co.com/company/hipaa-notice-of-privacy-practices (last visited April 18, 2016).

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                                      - 7 -

lucrative targets for cybercriminals."[11]

36.  Similarly, Kevin Watson, CEO of the cyber-security firm Netsurion, reportedly explained the additional value of PHI as follows:

"It appears that diagnosis and treatment information might have been exposed, which could unlock the potential for significant medical fraud. And if insurance plan information was stolen along with identity information, data thieves would have a good indicator on which identities hold a higher value, based on the value of the insurance plan[.]" [] ...

"If thieves focus on the individuals with the highest plan costs, these are likely to be people who are more established in their lives, have families, higher incomes and better credit, meaning their identities are worth even more on the black market[.]"[12]

37.  Despite the additional value of medical information on the black market, and the duty imposed on healthcare providers to maintain the confidentiality of medical information, healthcare providers have lagged behind other industry sectors in protecting confidential information.

38.  In April 2014, the FBI issued a private industry notice to the healthcare sector stating that it was vulnerable to cybercrime and not living up to the standards necessary to protect the confidentiality of the personal and medical information in its possession.  The warning explained: "The healthcare industry is not as resilient to cyber intrusions compared to the financial and retail sectors, therefore the possibility of increased cyber intrusions is likely."[13]  According a Reuters article, the notice cited a February 2014 report from the non-profit SANS Institute, which trains cybersecurity professionals. "SANS had warned the healthcare industry was not well-prepared to fight growing cyber threats, pointing to hundreds of attacks on radiology imaging

---

[11]*See* http://www.esecurityplanet.com/network-security/21st-century-oncology-notifies-2.2-million-patients-of-data-breach.html (last visited April 14, 2016).
[12] *See Hospital Leaks 2.2M Cancer Patient Records, Because Their Life Wasn't Bad Enough*, Catalin  Cimpanu,  Softpedia,  March  9,  2016,  available  online  at http://news.softpedia.com/news/hospital-leaks-2-2m-cancer-patient-records-because-their-life-wasn-t-bad-enough-501549.shtml (last visited April 14, 2016).
[13] *See* Jim Finkle, *Exclusive: FBI warns healthcare sector vulnerable to cyber attacks*, Reuters, April 23, 2014, available online at http://www.reuters.com/article/us-cybersecurity-healthcare-fbi-exclusiv-idUSBREA3M1Q920140423 (last visited April 18, 2016).

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                    - 8 -

1   software, video conferencing equipment, routers and firewalls."[14]

2   **21st Century Oncology Has Learned of Two Data Breaches From Federal Authorities**

3        39.     As if to prove the point of the FBI's warning that healthcare providers are not

4   adequately equipped to protect the personal and medical information in their possession, 21st

5   Century Oncology has now twice learned about data breaches involving its records from federal

6   law enforcement officials.

7        40.     In 2013, 21st Century Oncology of Maryland notified Maryland's Office of the

8   Attorney General that it had learned from federal law enforcement officials that a former employee

9   of 21st Century Oncology had improperly accessed the personal health information of several

10  patients.[15] The information was shared with a third party who then used the information, or

11  intended to use the information, to file fraudulent tax returns with the Internal Revenue Service.

12       41.     At the time 21st Century Oncology notified the Maryland Attorney General of the

13  data breach, it had not yet completed its "own internal investigation to determine how the

14  employee was able to improperly access the patients' personal information."   21st Century

15  Oncology also could not pinpoint the date and time of the data breach, stating it believed the data

16  was "improperly accessed between October 11, 2011 and August 8, 2012."   This belief was

17  apparently based on the government's felony indictment of the former employee, not on any

18  systems 21st Century Oncology had in place to identify the sources or causes of data breaches.  As

19  a result of the data breach, 21st Century Oncology promised to review its security procedures and

20  take appropriate corrective actions.

21       42.     Now, as stated in its March 2016 notifications, 21st Century Oncology has again

22  learned of a breach of the confidentiality of the personal and medical information in its possession

23  from the FBI.

24  _____

25  [14] *Id.*

    [15] 21st Century Oncology of Maryland Security Breach Notification dated July 10, 2013, attached

26  hereto    has    **Exhibit    C**    and    available    on    the    internet    at

    https://www.oag.state.md.us/idtheft/Breach%20Notices/2013/itu-230673.pdf (last visited April 18,

27  2016).

28

43.     As with the 2013 data breach, 21st Century Oncology was apparently oblivious of the data breach until it learned of the breach from the FBI.  Like the 2013 data breach, 21st Century Oncology has also been unable to determine, on its own, how and when the data breach occurred.  Even after hiring what it calls "a leading forensics firm" to support its investigation, its notifications only identify a date on which the database containing personal and medical information *may* have been accessed by the unauthorized third party.

44.     The two data breaches, and 21st Century Oncology's responses to the two data breaches, show that 21st Century Oncology has not had systems in place to adequately monitor and protect against unauthorized access to patient information.  21st Century Oncology failed to properly encrypt the personal and medical information in its possession for electronic storage, as would have been reasonable and appropriate in light of its known and admitted risk of cyber intrusions, ensuring only authorized access and usage to the information.  21st Century Oncology's security systems also apparently lack sufficient user identification and audit controls, leaving 21st Century Oncology unable to identify the who what, when, where, and how of unauthorized access to patient information. Such failures on the part of 21st Century Oncology constituted negligence and were not in compliance with the technical requirements of HIPAA or the medical information storage requirements of the Confidentiality of Medical Information Act.

45.     As more broadly explained by Chenxi Wang, Chief Strategy Officer of Twistlock, a cyber security firm, to the online publication esecurityplanet.com: "The fact that many of these breaches are reported by the FBI, rather than discovered by the company that holds the data, speaks to the heart of the problem -- many organizations do not have sufficient technical expertise and capabilities in place to protect data and respond in a timely manner in the event of a breach," Wang added. "This is becoming an increasingly pressing problem for the entire industry."[16]

---

[16] *21st Century Oncology Notifies 2.2 Million Patients of Data Breach*, Jeff Goldman, eSecurity Planet, March 11, 2016, available at http://www.esecurityplanet.com/network-security/21st-century-oncology-notifies-2.2-million-patients-of-data-breach.html (last visited April 18, 2016).

**21st Century Oncology Has Offered an Insufficient Remedy**

46.     The only remedy 21st Century Oncology has offered affected patients is one year of free identity theft protection services.  However, the services are insufficient to remedy the data breach, in light of the nature of the information that was acquired by the intruder(s).

47.     The Experian ProtectMyID service is a credit monitoring service may allow affected individuals to react and respond to attacks on their credit over the next year, after they have already occurred.   However, the Experian ProtectMyID service does not adequately monitor or protect against medical identity theft.  Indeed, 21st Century Oncology's notifications admit as much, telling affected patients "[w]e also recommend that you regularly review the explanation of benefits that you receive from your health insurer. If you see services that you did not receive, please contact your insurer immediately."[17]

48.     According to Experian's website, "healthcare data breach is one of the many crimes that facilitate medical identity theft."[18]

49.     Medical identity theft can have serious consequences.  According to the Federal Trade Commission ("FTC"), it can result in bills for medical services that consumers never received; calls from debt collectors and medical collection notices for bills consumers do not owe; exhaustion of health insurance benefits based on services provided not to the insured but the medical identity thief; or denial of, or increased cost for, insurance based on medical records showing conditions the consumer does not actually have.[19]

50.     The Experian ProtectMyID website admits that the service, alone, is not adequate to protect against medical identity theft.  In a blog post discussing the "rising threat" of medical identity theft, the service explains:

> "The consequences of financial identity theft are bad enough," asserts Experian's ProtectMyID, "but medical identity theft carries the extra danger

---

[17] *See* **Exhibit A.**
[18]     *See*   http://www.experian.com/data-breach/newsletters/best-practices-for-resolving-medical-identity-theft.html (last visited April 14, 2016)
[19] *See* Federal Trade Commission, Consumer Information on Medical Identity Theft, available at https://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited April 18, 2016).

that errors in your medical file could lead to a misdiagnosis or mistreatment when you seek medical care in the future. Even if changes to an individual's medical records are not a deliberate part of the thief's scam, they may nonetheless be the result."

With healthcare coverage comes a flurry of documentation that explains coverage, charges and benefits. The good news is that, while the amount of information can sometimes feel excessive, it provides a solid framework to check for fraudulent or suspicious entries. But occasionally it's not enough simply to scan over your medical information alone. One of the most effective and proactive ways to combat medical fraud is to also monitor your credit report closely in tandem with your medical records review.[20]

51.     Additionally, resolving medical identity theft can be very time consuming and difficult.  The affected individual may need to obtain a full copy of their medical record, at their own expense, by contacting each doctor, clinic, hospital, pharmacy, laboratory or other healthcare provider that may have information about them or that may have been used by the medical identity thief and then review the entire record for errors; the affected individual will also need to review all insurance explanations of benefits for errors;  the affected individual will then write to the health plan and medical providers explaining what information is inaccurate along with supporting evidence of why the information is inaccurate and hope that the health plan or provider agrees with their explanation.[21]  They may also need to change insurance identification numbers so that their insurance can no longer be used by the identity thief.  It may take years for an individual to discover that their medical record has been affected and it may take years for the records to get corrected.[22]

52.     Accordingly, individuals affected by this data breach have been harmed and will continue to be harmed by the data breach, regardless of whether they take advantage of the single year of identity protection services that have been offered to them by 21st Century Oncology.

---

[20] *See Medical Fraud: Dangerous or Benign*, ProtectMyID Blog, October 21, 2015, available at http://blog.protectmyid.com/2015/10/21/medical-fraud-dangerous-or-benign/ (last visited April 18, 2016).
[21] *See* Federal Trade Commission, Consumer Information on Medical Identity Theft, available at https://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited April 18, 2016).
[22] *See* Herb Weisbaum, *Medical identity theft could cost you your life,* www.today.com, Sept. 12, 2013, available online at http://www.today.com/money/medical-identity-theft-could-cost-you-your-life-8C11133476 (last visited April 18, 2016).

**Plaintiff Corbel's Experience**

53.     Plaintiff James Corbel received treatment at Redding Cancer Treatment Center and Solace Cancer Care in or around 2009.  Solace Cancer Care and Redding Cancer Treatment Center are located in Redding, California.

54.     At or around the time of his treatment, Solace Cancer Care and Redding Cancer Treatment Center collected and/or generated confidential personal and medical information about him.  Based on information and belief, such information would have included his name, Social Security number, physician's name, diagnosis and treatment information, and insurance information.   Corbel reasonably expected that the confidentiality of this personal and medical information would be preserved.

55.     In or around March 2016, Corbel received a data breach notification from 21st Century Oncology.  The notification stated an intruder may have accessed a database containing information that may have included his name, Social Security number, physician's name, diagnosis and treatment information, and insurance information.  The notification stated that it related to a data breach at 21st Century Oncology but did not specifically reference Solace Cancer Care or Redding Cancer Treatment Center.  Corbel was not aware Solace Cancer Care and Redding Cancer Treatment Center were related to 21st Century Oncology.  Corbel also did not recall ever receiving any treatment from any healthcare provider or facility identified as 21st Century Oncology.  As a result, Corbel believed that he received the notification in error.

56.     21st Century Oncology's website, however, reflects that it owns and/or operates Solace Cancer Care and Redding Cancer Treatment Center.  Upon learning that 21st Century Oncology owned or operated Solace Cancer Care and Redding Cancer Treatment Center, Corbel was upset and angered that his personal and medical information were involved in the data breach.

57.     The notification further offered Corbel "a free one-year membership of Experian's ProtectMyId Alert."  Based on information and belief, Corbel has not been offered any form of monetary compensation to compensate him for the disclosure of his personal and medical

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                      - 13 -

1    information.

2         58.    Since the data breach, Corbel has received multiple telephone calls from scam

3    artists claiming to be from the IRS, attempting to convince him to pay for what they claim are

4    unpaid taxes.  Based on information and belief, Corbel never received any similar IRS related

5    scam telephone calls before the data breach.

6    **Plaintiff Haatvedt's Experience**

7         59.    Plaintiff Roxanne Haatvedt was a patient at Redding Cancer Treatment Center and

8    Solace Cancer Care in 2015.  She was also separately a patient of a physician who is identified as

9    being associated with 21st Century Oncology on 21st Century Oncology's website.  Both treatment

10   centers and the 21st Century Oncology related physician are located in Redding, California.

11        60.    At the time of her visits, the two treatment centers and the 21st Century Oncology

12   related physician collected and/or generated confidential personal and medical information about

13   her.  Based on information and belief, such information would have included her name, Social

14   Security number, physician's name, diagnosis and treatment information, and insurance

15   information.  Haatvedt reasonably expected that the confidentiality of this personal and medical

16   information would be preserved.

17        61.    In or around March 2016, Haatvedt received a data breach notification from 21st

18   Century Oncology.  The notification stated an intruder may have accessed a database containing

19   information that may have included her name, Social Security number, physician's name,

20   diagnosis and treatment information, and insurance information.  The notification stated that it

21   related to a data breach at 21st Century Oncology but did not specifically reference the treatment

22   centers from which she received treatment.

23        62.    The notification further offered Haatvedt "a free one-year membership of

24   Experian's ProtectMyId Alert."  Based on information and belief, Haatvedt has not been offered

25   any form of monetary compensation to compensate her for the disclosure of her personal and

26   medical information.

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                              - 14 -

63.     Upon receipt of the notification, Haatvedt was upset and angered that her personal and medical information were involved in the data breach.

## CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring this action pursuant to Code of Civil Procedure § 382 on behalf of themselves and the following class (the "Class"):

> All patients of 21st Century Oncology and its network of treatment centers and physicians, who are residents of the state of California, and whose confidential personally identifiable medical information was accessed or acquired by an unauthorized third party in the data breach described in 21st Century Oncology's March 2016 data breach notification.[23]

65.     The Class Plaintiffs seek to represent contains numerous members and is clearly ascertainable.  Plaintiffs reserve the right under Rule 3.765 of the California Rules of Court to amend or modify the class description with greater specificity or to add sub-classes or limitation to particular issues.

66.     By their unlawful actions, Defendants have violated the Plaintiffs and the Class's medical privacy rights under the law of the State of California.  The questions raised are, therefore, of common or general interest to the Class members, who have a well-defined community of interest in the questions of law and fact raised in this action.

67.     Plaintiffs' claims are typical of those of the Class, as Plaintiffs now suffer from the same violations of the law as other putative class members.  Plaintiffs have retained competent counsel to represent them and the Class, and Plaintiffs will fairly and adequately represent the interests of the Class.

68.     This action may properly be maintained as a class action under Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**Numerosity**

69.     According to information and belief, the Class consists of at least 500 individuals,

---

[23] Specifically excluded from the Class are the court and its staff, and Defendants officers, directors, legal representatives, successors, subsidiaries, and/or assigns.

1    making joinder of individual cases impracticable.  The exact size of the Class and the identities of

2    the individual members thereof have already been ascertained by Defendants and are ascertainable

3    through Defendants' records.

4    **Typicality**

5          70.     The claims of Plaintiffs are typical of the claims of all of the other members of the

6    Class.  The claims of the Plaintiffs and members of the Class are based on the same legal theories

7    and arise from the same unlawful conduct, resulting in the same injury to Plaintiffs and to all of the

8    other Class members.

9    **Common Questions of Law and Fact**

10         71.     There are questions of law and fact common to the Class that predominate over any

11   questions affecting only individual class members.   Those common questions of law and fact

12   include, without limitation, the following:

13            a.      Whether Defendants failed to implement and maintain reasonable security

14                    procedures and practices to preserve the confidentiality of Plaintiffs' and

15                    Class members' personal and medical information;

16            b.      Whether Defendants negligently created, maintained, preserved, or stored

17                    Plaintiffs' and Class members' personal and medical information in

18                    violation of California Civil Code § 56.101;

19            c.      Whether Defendants negligently released Plaintiffs' and Class members'

20                    personal and medical information to unauthorized persons in violation of

21                    California Civil Code § 56.10;

22            d.      Whether Plaintiffs and Class members are entitled to statutory damages

23                    under California Civil Code § 56, *et seq.*;

24            e.      Whether Plaintiffs and Class members are entitled to equitable and/or

25                    injunctive relief.

26

27

28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                                    - 16 -

**Adequacy**

72.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other Class members.

**Superiority**

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual litigation of the claims of each class member is impracticable. Even if every individual class member could afford individual litigation, the court system could not. It would be unduly burdensome to the Court in which the individual litigation of the numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each class member. Plaintiff anticipates no difficulty in the management of this case as a class action.

74.     The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impeded the ability of such non-party Class members to protect their interests.

75.     The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendants.

76.     Defendants have acted or refused to act in respects generally applicable to the Class, thereby making appropriate final and injunctive relieve or corresponding declaratory relief with

1   regard to members of the Class as a while as requested herein.  Likewise, Defendants' conduct as

2   described above is unlawful, continuing and capable of repetition and will continue unless

3   restrained and enjoined by the Court.

### FIRST CAUSE OF ACTION

**Violation of the of California Confidentiality of Medical Information Act**

**(Cal. Civ. Code §§ 56, *et seq.*)**

(By Plaintiffs and all Class members against all Defendants)

77.    Plaintiffs incorporate by reference each allegation set forth above as if fully set forth herein and further alleges as follows.

78.    Defendants are providers of health care, contractors, and/or other authorized recipients of personal and confidential medical information as defined and set forth in the California Confidentiality of Medical Information Act, California Civil Code §§ 56, *et seq.* ("CMIA").  They are subject to the requirements and mandates of the CMIA, including but not limited to §§ 56.10, 56.101 and 56.36.

79.    Defendants lawfully came into possession of Plaintiffs' and Class members', personally identifiable medical information, including their names, Social Security numbers, physicians' names, diagnoses and treatment information, and insurance information, and had a duty to exercise reasonable care in preserving the confidentiality of this information.

80.    Under § 56.101 of the CMIA., Defendants were required to create, maintain, preserve, store, abandon, destroy, or dispose of Plaintiffs' and Class members' medical records in a manner that preserved the confidentiality of the medical information contained therein.

81.    As alleged herein, Defendants unlawfully failed to maintain and preserve the confidentiality of Plaintiffs' and Class members' medical information and negligently created, maintained, persevered, stored, abandoned, destroyed, or disposed of Plaintiffs' and Class members' medical information, allowing an unauthorized person to access and/or acquire Plaintiffs' and Class members' medical information.

82.    As alleged herein, Defendants were also required to obtain Plaintiffs' and Class members' authorizations prior to disclosing their medical information.

---

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF       - 18 -

83.     Defendants unlawfully failed to maintain and preserve the confidentiality of Plaintiffs' and Class members' medical information by negligently releasing the information to an unauthorized person in violation of § 56.36 of the CMIA.

84.     As a direct and proximate result of Defendants' violations of the CMIA, Plaintiffs and Class members have been injured within the meaning of the CMIA and are entitled to damages of $1,000 each pursuant to California Civil Code § 56.36(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, pray for the following relief:

a.     An order certifying the Class and appointing Plaintiffs as representatives of the Class, and appointing counsel for Plaintiffs as lead counsel for the Class;

b.     An order declaring that the actions of Defendants, as set out above, are in violation of California Civil Code § 56.10;

c      An order declaring that the actions of Defendants, as set out above, are in violation of California Civil Code § 56.101;

e.     A judgment for and award of statutory damages to Plaintiff and the members of the class pursuant to California Civil Code § 56.36(b)(1);

f.     A permanent injunction enjoining Defendants from engaging in conduct in violation of the CMIA, including California Civil Code §§ 56.10 and 56.101;

g.     Payment of costs of suit herein incurred pursuant to, *inter alia,* California Civil Code § 56.35;

h.     Payment of attorneys' fees pursuant to, *inter alia,* California Civil Code § 56.35 and/or California Code of Civil Procedure § 1021.5;

i.     An award of pre- and post-judgment interest; and

j.     For such other or further relief as the Court may deem proper.

1

2

3

4

5     Dated:  April 25, 2016

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**KELLER GROVER LLP**

Carey G. Been

Attorneys    for    JAMES    CORBEL    and
ROXANNE  HAATVEDT,  individually  and
on  behalf  of  a  class  of  similarly  situated
individuals

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**                          - 20 -

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  April 25, 2016

**KELLER GROVER LLP**

Carey G. Been
Attorneys for JAMES CORBEL and
ROXANNE HAATVEDT, individually and
on behalf of a class of similarly situated
individuals

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF                          - 21 -

# EXHIBIT A

21st Century Oncology

Return Mail Processing Center
PO Box 6336
Portland, OR 97228-6336

<<mail id>>
<<First Name>><<Last Name>>
<<Address1>>
<<City>><<State>><<Zip>>                                                    <<Date>>

Dear <<First Name>> <<Last Name>>:

21st Century Oncology is committed to maintaining the privacy and security of our patients' personal information. Regrettably, we are writing to inform you of an incident involving some of that information.

On November 13, 2015, the Federal Bureau of Investigation (FBI) advised us that patient information was illegally obtained by an unauthorized third party who may have gained access to a 21st Century database. We immediately hired a leading forensics firm to support our investigation, assess our systems and bolster security. The forensics firm determined that, on October 3, 2015, the intruder may have accessed the database, which contained information that may have included your name, Social Security number, physician's name, diagnosis and treatment information, and insurance information. We have no evidence that your medical record was accessed.

The FBI asked that we delay notification or public announcement of the incident until now so as not to interfere with its investigation. Now that law enforcement's request for delay has ended, we are notifying patients as quickly as possible. We continue to work closely with the FBI on its investigation of the intrusion into our system. In addition to security measures already in place, we have also taken steps to enhance internal security protocols to help prevent a similar incident in the future.

We have no indication that your information has been misused in any way; however, out of an abundance of caution, we are offering you a free one-year membership of Experian's® ProtectMyID® Alert. This product helps detect possible misuse of your personal information and provides you with identity protection services focused on immediate identification and resolution of identity theft. ProtectMyID Alert is completely free to you, and enrolling in this program will not hurt your credit score. For more information on identity theft prevention and ProtectMyID Alert, including instructions on how to activate your complimentary one-year membership, please see the additional information provided in this letter. We also recommend that you regularly review the explanation of benefits that you receive from your health insurer. If you see services that you did not receive, please contact your insurer immediately.

We deeply regret any concern this may cause you, and we want to emphasize that your care will not be affected by this incident. Should you have any questions, please call 1-866-446-1405, from 9 a.m. to 9 p.m. Eastern Time, Monday through Friday.

Sincerely,

Daniel Dosoretz, M.D.
President and CEO

Attachment

O4581 v.06 03.01.2016

### Activate ProtectMyID Now in Three Easy Steps

1. ENSURE **That You Enroll By: July 7, 2016** (Your code will not work after this date.)
2. VISIT the **ProtectMyID Website to enroll: www.protectmyid.com/redeem**
3. PROVIDE **Your Activation Code: <<code>>**

If you have questions or need an alternative to enrolling online, please call (866) 271-3084 and provide engagement #: **PC98965**

## ADDITIONAL DETAILS REGARDING YOUR 12-MONTH PROTECTMYID MEMBERSHIP:

A credit card is not required for enrollment.

Once your ProtectMyID membership is activated, you will receive the following features:

- **Free copy of your Experian credit report**
- **Surveillance Alerts for:**
  - Daily Bureau Credit Monitoring: Alerts of key changes and suspicious activity found on your Experian, Equifax®, and TransUnion® credit reports.
- **Identity Theft Resolution and ProtectMyID ExtendCARE:** Toll-free access to U.S.-based customer care and a dedicated Identify Theft Resolution agent who will walk you through the process of fraud resolution from start to finish for seamless service. They will investigate each incident; help with contacting credit grantors to dispute charges and close accounts, including credit, debit, and medical insurance cards; assist with freezing credit files; and contact government agencies.
  - It is recognized that identity theft can happen months and even years after a data breach. To offer added protection, you will receive ExtendCARE™, which provides you with the same high level of Fraud Resolution support even after your ProtectMyID membership has expired.
- **$1 Million Identity Theft Insurance*:** Immediately covers certain costs, including lost wages, private investigator fees, and unauthorized electronic fund transfers.

**Activate your membership today at <u>www.protectmyid.com/redeem</u>
or call (866) 271-3084 to register with the activation code above.**

Once your enrollment in ProtectMyID is complete, you should carefully review your credit report for inaccurate or suspicious items. If you have any questions about ProtectMyID, need help understanding something on your credit report, or suspect that an item on your credit report may be fraudulent, please contact Experian's customer care team at (866) 271-3084.

Even if you choose not to take advantage of this free credit monitoring service, we recommend that you remain vigilant to the possibility of fraud and identity theft by reviewing your credit card, bank, and other financial statements for any unauthorized activity. You may also obtain a copy of your credit report, free of charge, directly from each of the three nationwide credit reporting agencies. To order your credit report, free of charge, once every twelve months, please visit www.annualcreditreport.com or call toll-free at 1-877-322-8228. Contact information for the three nationwide credit reporting agencies is as follows:

| Equifax | Experian | TransUnion |
|---|---|---|
| PO Box 740241 | PO Box 2002 | PO Box 1000 |
| Atlanta, GA 30374 | Allen, TX 75013 | Chester, PA 19022 |
| www.equifax.com | www.experian.com | www.transunion.com |
| 1-800-685-1111 | 1-888-397-3742 | 1-800-916-8800 |

If you believe you are the victim of identity theft or have reason to believe your personal information has been misused, you should immediately contact the Federal Trade Commission and/or the Office of the Attorney General in your home state. Contact information for the Federal Trade Commission is as follows:

Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580
www.ftc.gov/idtheft
1-877-438-4338

You can obtain information from these sources about steps an individual can take to avoid identity theft as well as information about fraud alerts and security freezes. You should also contact your local law enforcement authorities and file a police report. Obtain a copy of the police report in case you are asked to provide copies to creditors to correct your records.

* Identity theft insurance is underwritten by insurance company subsidiaries or affiliates of AIG. The description herein is a summary, intended for informational purposes only, and does not include all terms, conditions, and exclusions of the policies described. Please refer to the actual policies for terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions.

# EXHIBIT B

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# FORM 8-K

### CURRENT REPORT PURSUANT TO
### SECTION 13 OR 15(D) OF THE
### SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported): **March 4, 2016**

# 21st CENTURY ONCOLOGY
# HOLDINGS, INC.
### (Exact Name of Registrant as Specified in Charter)

**Delaware**
(State or Other Jurisdiction of Incorporation)

| | |
|---|---|
| **333-170812**<br>(Commission File Number) | **26-1747745**<br>(I.R.S. Employer Identification No.) |
| **2270 Colonial Boulevard**<br>**Fort Myers, Florida**<br>(Address of Principal Executive Offices) | **33907**<br>(Zip Code) |

**(239) 931-7275**
(Registrant's Telephone Number, including Area Code)

**N/A**
(Former Name or Former Address, if Changed Since Last Report.)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01        Other Events.**

21st Century Oncology Holdings, Inc. (the "Company") announced on March 4, 2016 that it was advised on November 13, 2015, by the Federal Bureau of Investigation (the "FBI") that patient information was illegally obtained by an unauthorized third party who may have gained access to a Company database. The Company immediately hired a leading forensic firm to support its investigation, assess its system and bolster its security. Based on its investigation, the Company determined that the intruder may have accessed the database on October 3, 2015, which contained the personal information of some patients (including patient name, social security number, physician's name, diagnoses and treatment and insurance information). The Company has no evidence that patient medical records were accessed. The Company is notifying approximately 2.2 million current and former patients that certain information may have been copied and transferred. The Company has no indication that patient information has been misused in anyway.

The FBI asked that the Company delay notification or public announcement of the incident until March 4, 2016 so as not to interfere with its investigation. Now that law enforcement's request for delay has ended, the Company is notifying patients and regulatory agencies as quickly as possible.

The Company continues to work closely with the FBI on its investigation. In addition to security measures already in place, the Company has also taken additional steps to enhance internal security protocols to help prevent a similar incident in the future.

While the Company has contingency plans and insurance coverage for certain potential liabilities relating to the intrusion, the coverage may not be sufficient to cover all claims and liabilities. The Company will be responsible for deductibles and any other expenses that may be incurred in excess of insurance coverage. The Company will recognize these expenses in the periods in which they are incurred.

On March 4, 2016, the Company issued a press release regarding this data breach. A copy of the press release is attached hereto as Exhibit 99.1 and incorporated herein by reference.

**Item 9.01.        Financial Statements and Exhibits.**

(d) Exhibits.

| Exhibit Number | Description |
| --- | --- |
| 99.1 | Press Release issued by the Company on March 4, 2016 |

2

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**21st CENTURY ONCOLOGY HOLDINGS, INC.**

Date: March 4, 2016

By:  /s/ LeAnne M. Stewart
Name: LeAnne M. Stewart
Title: Chief Financial Officer

3

EXHIBIT INDEX

| Exhibit Number | Description |
| --- | --- |
| 99.1 | Press Release issued by the Company on March 4, 2016 |

4

Exhibit 99.1

**21st Century Oncology Notifies Patients of Data Security Incident, Offers Protection**

Fort Myers, FL — March 4, 2016 — Today, 21st Century Oncology Holdings, Inc. announced that it is investigating an unauthorized third party intrusion into its network. The company is providing notice to individuals that may have been affected by the incident and offering one year of complimentary identity protection services to those individuals.

On November 13, 2015, the Federal Bureau of Investigation (FBI) advised 21st Century that patient information was illegally obtained by an unauthorized third party who may have gained access to a 21st Century database. Upon learning of the intrusion, we immediately hired a leading forensics firm to support our investigation, assess our systems and bolster security. Based on this investigation, 21st Century has determined that the intruder may have accessed the database on October 3, 2015, which contained the personal information of some patients, including their names, social security numbers, physicians' names, diagnoses and treatment information, and insurance information. We have no evidence that patients' medical records were accessed.

The FBI asked that 21st Century delay notification or public announcement of the incident until today so as not to interfere with its investigation. Now that law enforcement's request for delay has ended, the company is notifying patients as quickly as possible. 21st Century continues to work closely with the FBI on its investigation. In addition to security measures already in place, we have also taken additional steps to enhance internal security protocols to help prevent a similar incident in the future.

21st Century has no indication that patients' information has been misused in any way; however, out of an abundance of caution, the company is offering one year of free identify theft protection services to potentially affected patients.

21st Century remains committed to maintaining the privacy and security of our patients' personal information.

More information for potentially affected patients is available on 21st Century's website: https://www.21co.com/SecurityIncident. 21st Century has also established a call center for individuals with questions, which can be reached at 1-866-446-1405, from 9 a.m. to 9 p.m. Eastern Time, Monday through Friday.

**About 21st Century Oncology Holdings, Inc.**

21st Century Oncology Holdings, Inc. is the largest global, physician led provider of integrated cancer care services. The Company offers a comprehensive range of cancer treatment services, focused on delivering academic quality, cost-effective patient care in personal and convenient settings. As of December 31, 2015, the Company operated 181 treatment centers, including 145 centers located in 17 U.S. states and 36 centers located in seven countries in Latin America.

Media Contact:
Andrew Liuzzi
312-240-2731
Andrew.Liuzzi@Edelman.com

# EXHIBIT C



CERTIFIED MAIL – 7012 1010 0002 4846 2750
RETURN RECEIPT REQUESTED

July 10, 2013

Office of the Attorney General
Attn: Security Breach Notification
200 St. Paul Place
Baltimore, MD 21202

Dear Sir or Madam:

In accordance with MD Code, Com. Law § 14-3504(h), we are writing to inform you that on May 15, 2013 we learned from federal law enforcement officials that an employee of 21st Century Oncology Services, Inc., an affiliate of Peninsula Cancer Care Center and 21st Century Oncology of Maryland, has been criminally charged for having improperly accessed the personal health information of several of our patients, including two (2) patients from Maryland.

Based on the felony indictment against the former employee, we believe that the personal health information was improperly accessed between October 11, 2011 and August 8, 2012. Also based on the indictment, we have reason to believe that the individual obtained the name, social security number, and date of birth of these patients, and shared this information with a third party, who used it and/or intended to use it in order to file fraudulent tax returns with the Internal Revenue Service.

The employee in question is no longer employed by 21st Century Oncology Services, Inc. In addition, we are cooperating fully in the ongoing federal investigation of this matter, and we are also conducting our own internal investigation to determine how the employee was able to improperly access the patients' personal information.

We have established a toll-free number that patients can call if they believe their information has been misused. We are also offering individuals whose information was improperly accessed one year of credit monitoring service at no cost.

Please find enclosed a sample copy of the breach notice that we intend to send to these Maryland patients. In accordance with the Public Information Protection Act, the letter includes the following information:

- a description of the compromised information;
- contact information for our Privacy Officer via a toll-free number.
- toll-free numbers and addresses for Equifax, Experian and TransUnion;
- toll-free numbers, addresses and Websites for the Federal Trade Commission (FTC) and the Office of the Attorney General (OAG); and
- a statement that the individual can obtain information from these sources about steps to avoid identity theft.

While we believe this notice is compliant with the standards established by the Public Information Protection Act, regardless of this fact please note that it also meets the standards for breach notifications established under the Health Insurance Portability and Accountability Act of 1996 and the HITECH Act by the United States Department of Health and Human Services, Office for Civil Rights, which is our primary and functional federal regulator regarding privacy and security matters.

Please contact me if you have any questions in regard to this notice.

Sincerely,

Andrea L. Britt
Privacy and Security Officer

Enclosures

July ___, 2013


«AddressBlock»

«GreetingLine»

Protecting our patients' personal information is a priority at 21st Century Oncology of Maryland d/b/a Peninsula Cancer Care Center, and we take any potential misuse of our patients' private health information very seriously. Unfortunately, we are writing to inform you that despite having a system in place to protect your personal information, we learned from federal law enforcement officials on May 15, 2013 that an employee of 21st Century Oncology Services, Inc., an affiliate of Peninsula Cancer Care Center, was being criminally charged for having improperly accessed your personal information.

Although it is not yet clear if or how this crime was perpetrated on both of us, we are doing everything possible to address this situation. The employee in question is no longer employed by 21st Century Oncology Services, Inc. We are cooperating fully in the government's ongoing investigation, and we are also conducting our own internal investigation to determine how the employee was able to access your personal information.

Based on the felony indictment against the former employee, we believe that your personal information was accessed between October 11, 2011 and August 8, 2012. Also based on the indictment, we have reason to believe that the individual obtained your name, social security number, and date of birth and shared this information with a third party, who used it and/or intended to use it in order to file fraudulent tax returns with the Internal Revenue Service.

If you think your personal information has been otherwise misused, please call 1-866-679-8944 so that we can investigate and provide that information to federal law enforcement officials investigating this matter.

In addition, in order to allow you to monitor your credit, we are also offering you one year of credit monitoring service at no cost.

Complimentary Three-Bureau Credit Monitoring Service

We have arranged for you to enroll in a three-bureau credit monitoring service called "My TransUnion Monitoring." The service is provided by TransUnion Interactive, one of the three nationwide credit reporting companies.

*To enroll in this free service online:*

1. Go to the TransUnion Monitoring website at www.transunionmonitoring.com;
2. In the space referenced as "Activation Code", enter the following unique 12-letter Activation Code: [_____]
3. Then follow the simple steps to receive your credit monitoring service online.

*To enroll in this free service by mail:*

If you do not have access to the Internet or if you simply prefer paper-based services, you may enroll by completing the attached Credit Monitoring Authorization Form and mailing or faxing it back to TransUnion. Their address and fax number are provided on the form.  After you have been enrolled in the paper-based service, TransUnion will send you credit updates by U.S. Priority Mail.

Due to privacy laws, we cannot register you directly. However, you can sign up for the online or offline credit monitoring service anytime between now and August 15, 2013.  Please note that credit monitoring services might not be available for individuals that do not have a credit file with TransUnion, or an address in the United States (or its territories) or a valid Social Security number.

Other Resources

Please note that, as required by Maryland law, we also provided notice of this event to the Maryland Office of the Attorney General prior to sending you this notice. In addition, also in accordance with Maryland law, we are notifying you that the following available resources can provide additional information about preventing identity theft.

| *Credit Reporting Agencies* | *Government Resources* |
|---|---|
| Experian | Office of the Attorney General |
| 955 American Lane | 200 St. Paul Place |
| Schaumburg, IL 60173 | Baltimore, MD 21202 |
| http://www.experian.com/ | http://www.oag.state.md.us/index.htm |
| 1-888-397-3742 | 1-888-743-0023 |
| | |
| Equifax | The Federal Trade Commission |
| Equifax Credit Information Services, Inc | 600 Pennsylvania Avenue, NW |
| P.O. Box 740241 | Washington, DC 20580 |
| Atlanta, GA 30374 | http://ftc.gov/ |
| http://www.equifax.com | 1-877-438-4338 |
| 1-888-766-0008 | |
| | |
| TransUnion | |
| TransUnion LLC | |
| P.O. Box 6790 | |
| Fullerton, CA 92834 | |
| https://fraud.transunion.com | |
| 800-680-7289 | |

We sincerely regret that this criminal action was allegedly taken by one of our employees.  We are committed to insuring patient's information is protected and secure.  Unfortunately, even the best systems cannot prevent all forms of criminal conduct.  Nonetheless, we are reviewing our security procedures as result of this incident and will take any appropriate actions revealed by our investigation or the government's investigation of this matter.

In addition, as these investigations unfold, we will notify you if we learn any additional material information that affects you or your personal information.  In the interim, if you have any questions, please feel free to contact me toll free at 1-866-679-8944.

Sincerely,


Andrea L. Britt
Privacy and Security Officer



## TransUnion Authorization Form

### Request for Offline, paper-based, TransUnion Three-Bureau Credit Monitoring Service

**Directions:**
▶ Please print clearly and complete all fields
▶ Return signed and completed form to TransUnion by October 15, 2013

**Mail or Fax to:**

TransUnion
1561 E. Orangethope Ave., Suite 100
Fullerton, CA 92831
Fax: (714) 680-7201

Offer ID: B24638 [21st Century Oncology]

## Personal Information

**First Name**

**Middle Name**

**Last Name**

**Suffix (JR, SR, II, III, IV, etc.)**

**Home Phone Number**

**Alternate Phone Number**

**Social Security Number**

**Activation Code "Required Field" Reference Notification Letter**

D S R

## Address Information

**Street Address**

**Apt. or Unit Number**

**City**

**State**

**Zip Code**

I am submitting this authorization to TransUnion to start my enrollment, at no cost to me, in an offline paper-based TransUnion Three-Bureau Credit Monitoring Service, via U.S. Mail, which includes daily monitoring of my credit files at TransUnion, Experian and Equifax for a period of one year. I also certify that I am the person named above and that I am submitting this authorization to receive my TransUnion credit report and credit score for my personal review. I authorize TransUnion Interactive to access my credit data at TransUnion, Experian and Equifax.

Signature: _____   Date: _____

☐ Check here if you would like TransUnion to add an initial 90-day "Fraud Alert" to your credit report which requests creditors to contact you before issuing credit.

Offer ID: B24638

*14616675*

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Eric Grover, SBN #136080<br>Carey Been, SBN #240996<br>Keller Grover LLP<br>1965 Market Street, San Francisco, CA 94103<br>TELEPHONE NO.: (415) 543-1305   FAX NO.: (415) 543-7861<br>ATTORNEY FOR *(Name):* James Corbel and Roxanne Haatvedt (Plaintiffs) | *FOR COURT USE ONLY*<br><br>**FILED**<br>**ALAMEDA COUNTY**<br><br>APR 25 2016<br><br>CLERK OF THE SUPERIOR COURT<br>By_____<br>Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

**CASE NAME:**
Corbel v. 21st Century Oncology of California, a Medical Corporation

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>**RG16813081** |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* One
5. This case ☑ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 04/25/16

Carey Been
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: Corbel v. 21st Century Oncology | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW <u>UNLIMITED</u> CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

| [X] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447) |
|---|---|
| | [ ] Pleasanton, Gale-Schenone Hall of Justice (448) |

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case? [ ] yes [ ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (<u>not</u> asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [X] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial | **Is the deft. in possession** |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential | **of the property?** |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs | **[ ] Yes [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No** | | |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

*14592549*

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Carey G. Been, Esq. SBN 240996<br>KELLER GROVER LLP<br>1965 Market Street<br>San Francisco, CA 94103<br>TELEPHONE NO.: 415-543-1305   FAX NO. (Optional): 415-543-7861<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff | **FILED**<br>ALAMEDA COUNTY<br>MAY 13 2016<br>CLERK OF THE SUPERIOR COURT<br>By _____<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

PLAINTIFF/PETITIONER: James Corbel and Roxanne Haatvedt

DEFENDANT/RESPONDENT: 21st Century Oncology of Calofornia, et al.

| PROOF OF SERVICE OF SUMMONS | CASE NUMBER:<br>RG 16813081 |
|---|---|
| | Ref. No. or File No.:<br>12336 |

(Separate proof of service is required for each party served.)

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet (served in complex cases only)
   e. ☐ cross-complaint
   f. ☑ other (specify documents): Civil Case Cover Sheet Addendum

3. a. Party served (specify name of party as shown on documents served):
   21st Century Oncology Holdings, Inc. c/o Corporation Service Company

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) (specify name and relationship to the party named in item 3a):

4. Address where the party was served:
   2711 Centerville Rd. Suite 400 Wilmington, DE 19808
5. I served the party (check proper box)
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): (2) at (time):
   b. ☐ **by substituted service.** On (date): at (time): I left the documents listed in item 2 with or in the presence of (name and title or relationship to person indicated in item 3):

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on (date): from (city): or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|


BY FAX

| PLAINTIFF/PETITIONER:  James Corbel and Roxanne Haatvedt | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  21st Century Oncology of Calofornia, et al. | RG 16813081 |

5. c. ☑ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                       (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☑ to an address outside California with return receipt requested. *(Code Civ. Proc., § 415.40.)*

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☑ On behalf of *(specify):*  21st Century Oncology Holdings, Inc.

    under the following Code of Civil Procedure section:

      ☑ 416.10 (corporation)                 ☐ 415.95 (business organization, form unknown)

      ☐ 416.20 (defunct corporation)         ☐ 416.60 (minor)

      ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)

      ☐ 416.40 (association or partnership)      ☐ 416.90 (authorized person)

      ☐ 416.50 (public entity)              ☐ 415.46 (occupant)

                                    ☐ other:

7. **Person who served papers**

  a. Name:  Venessa J. Sthymmel

  b. Address:  1965 Market Street, San Francisco, CA 94103

  c. Telephone number:  415-543-1305

  d. **The fee** for service was:  $

  e. I am:

    (1) ☑ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐ a registered California process server:

      (i) ☐ owner ☐ employee ☐ independent contractor.

      (ii) Registration No.:

      (iii) County:

8. ☑ **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

    or

9. ☐ **I am a California sheriff or marshal and I certify that the foregoing is true and correct.**

Date:  May 12, 2016

Venessa J. Sthymmel
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ _____
(SIGNATURE)

*14592545*

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Carey G. Been | SBN: 240996<br>Keller Grover LLP<br>1965 Market Street Third Floor  San Francisco, CA 94103<br><br>TELEPHONE NO.: (415) 543-1305 | FAX NO. (415) 543-7861 | E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiff: | *FOR COURT USE ONLY*<br><br># FILED<br>ALAMEDA COUNTY<br>MAY 13 2016<br>CLERK OF THE SUPERIOR COURT<br>By _____ Deputy |

| |
|---|
| **Superior Court of California County of Alameda** |
| STREET ADDRESS: 1225 Fallon Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Oakland, CA 94612 |
| BRANCH NAME: |

| | |
|---|---|
| PLAINTIFF/PETITIONER:  James Corbel and Roxanne Haatvedt | CASE NUMBER:<br>RG16813081 |
| DEFENDANT/RESPONDENT:  21st Century Oncology of California, a Medical Corporation, et al. | |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>12336 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ summons
   b. ☑ complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet  *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☑ other *(specify documents):*  Civil Case Cover Sheet Addendum
3. a.  Party served *(specify name of party as shown on documents served):*
   **21st Century Oncology of California, a Medical Corporation**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Becky DeGeorge - Authorized Agent**

4. Address where the party was served:  **2710 Gateway Oaks Drive, #150N**
   **Sacramento, CA 95863**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **5/3/2016**   (2) at *(time):* **2:53 PM**

   b. ☐ **by substituted service.**  On *(date):*  at *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*   or ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| | | |
|---|---|---|
| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/P139235 |



BY FAX

| PETITIONER: James Corbel and Roxanne Haatvedt | CASE NUMBER: |
|---|---|
| RESPONDENT: 21st Century Oncology of California, a Medical Corporation, et al. | RG16813081 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*         (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **21st Century Oncology of California, a Medical Corporation**
under the following Code of Civil Procedure section:

    ☑ 416.10 (corporation)         ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)     ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)         ☐ 415.46 (occupant)
                              ☐ other:

7. **Person who served papers**

  a. Name: **JEFFREY W. ABEGGLEN - Specialized Legal Services, Inc.**

  b. Address: **1112 Bryant St., Suite 200  San Francisco, CA 94103**

  c. Telephone number: **(415) 357-0500**

  d. **The fee for service was: $ 60.00**

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

      (i) ☐ owner   ☐ employee   ☑ independent contractor.

      (ii) Registration No.: **2009-98**

      (iii) County: **SACRAMENTO**

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

    Date: **5/4/2016**

    **Specialized Legal Services, Inc.**
    **1112 Bryant St., Suite 200**
    **San Francisco, CA 94103**
    **(415) 357-0500**
    **www.specializedlegal.com/**

| **JEFFREY W. ABEGGLEN** | |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | (SIGNATURE) |